EXHIBIT A

26D01-1712-PL-001894

Gibson Superior Court

Filed: 12/14/2017 1:53 PM
Clerk
Gibson County, Indiana

STATE OF INDIANA      )
                         ) SS:
COUNTY OF GIBSON    )

## IN THE GIBSON ~~CIRCUIT~~ COURT

SARAH (SIMON-PARTRIDGE) MEIGHEN )
         Plaintiff/Former Wife,        )
                                  )
vs.                                  )
                                  )
TIAA-CREF                       )
         Defendant/Retirement Plan    ) Cause No. ~~26C01-1712-PL-~~___
         Administrator,             )
                                  )
vs.                                  )
                                  )
VIVIAN PARTRIDGE AND          )
LOREN D. PARTRIDGE             )
         Defendants/Contingent      )
         Beneficiaries.             )

## E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE

1.     The party on whose behalf this form is being filed is:

       Initiating __X__        Responding ____     Intervening ____; and

       The undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:

       Name of party: **Sarah Beth Meighen**

       Address of party *(see Question # 5 below if this case involves a protection from abuse order, a workplace violence restraining order, or a no-contact order)*

                **21 Lakeview Drive**
                **Mt. Vernon, IN 47620**

2.     Attorney information for service as required by Trial Rule 5(B)(2)

       **Name:**         Thomas A. Massey
       **Atty. No.:**     10296-82
       **Address:**      Massey Law Offices, LLC
                     Curtis Building - Suite 502
                     915 Main Street
                     P.O. Box 3526
                     Evansville, IN 47734-3526
       **Telephone:**   (812) 491-9333
       **Facsimile:**    (812) 491-9339
       **E-mail:**        TAM@masseylawoffices.com

**IMPORTANT**: Each attorney specified on this appearance:

(a)   Certifies that the contact information listed for him on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

(b)   **Acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney; and**

(c)   Understands that he is solely responsible for keeping his Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3. This is a __**PL**__ case type as defined in Administrative Rule 8(B)(3).

4. This case involves child support issues. Yes___ No_**X**_

5. This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order. Yes ____ No _**X**_ *(If Yes, the initiating party must provide an address for the purpose of legal service but that address should not be one that exposes the whereabouts of a petitioner.)* The party shall use the following address for purposes of legal service:

_____   Attorney's address

_____   The Attorney General Confidentiality program address (contact the Attorney General at 1-800-321-1907 or e-mail address is **confidential@atg.in.gov**).

6. This case involves a petition for involuntary commitment: Yes ____ No_**X**_

If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

a.   Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above: _____

b.   State of Residence of person subject to petition: _____

c.   At least one of the following pieces of identifying information:

(i)    Date of Birth _____

(ii)   Driver's License Number _____
       State where issued _____ Expiration date_____

(iii)  State ID number _____
       State where issued _____ Expiration date _____

(iv)   FBI number _____

(v)    Indiana Department of Corrections Number _____

(vi)   Social Security Number is available and is being provided in an attached confidential document   Yes _____ No _____

7. There are related cases: Yes_**X**_No _____

8. Additional information required by local rule:

   Matter of Sarah (Simon-Partridge) Meighen v. Dane Partridge; Gibson Circuit
   Court; Cause No. 26C01-1109-DR-166

9. There are other party members: Yes_**X**_ (as identified in caption) No _____

10. This form has been served on all other parties (to be served via Certified
    Mail):  Yes_**X**_No _____

                              /s/ Thomas A. Massey
                              Thomas A. Massey

26D01-1712-PL-001894

Gibson Superior Court

STATE OF INDIANA )
) SS:
COUNTY OF GIBSON )

IN THE GIBSON ~~CIRCUIT~~ COURT

SARAH (SIMON-PARTRIDGE) MEIGHEN )
     Plaintiff/Former Wife, )
vs. )
     )
TIAA-CREF )
    Defendant/Retirement Plan ) Cause No. ~~26C01-1712-PL-~~____
    Administrator, )
vs. )
     )
VIVIAN PARTRIDGE AND )
LOREN D. PARTRIDGE )
    Defendants/Contingent )
    Beneficiaries. )

## FORMER WIFE'S VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT ORDER FOR SOLE OWNERSHIP AS PRIMARY BENEFICIARY OF FORMER HUSBAND'S RETIREMENT ACCOUNTS

Sarah Meighen ("Former Wife"), with counsel, Thomas A. Massey, and for Former Wife's Verified Complaint for Declaratory Judgment Order for Sole Ownership as Primary Beneficiary of Former Husband's Retirement Accounts, shows to the Court as follows:

    1.    Former Wife and Dane Partridge ("Former Husband") were divorced by "Final Order for Dissolution of Marriage" filed in the Gibson Circuit Court on November 1, 2011 (copy attached at Tab "1"). The Final Order was modified by Agreed Order on October 21, 2016 (copy attached at Tab "1"), and the Court's docket sheet confirms there have been no subsequent modifications. Since the October 21, 2016 Agreed Order, Former Husband was obligated to pay Former Wife child support in the sum of $1,100.00 per month for benefit of the parties' son, Daniel Henry Partridge (age 10; d/o/b 2/**/07).

2.     Former Husband verbally agreed to leave Former Wife as the beneficiary of his TIAA-CREF retirement accounts in the event of Former Husband's untimely death.

3.     Former Wife and her husband were close friends with Former Husband. They had dinners together and even vacationed together.

4.     Former Husband died on October 28, 2017.  A copy of the Certificate of Death is attached at Tab "2".   Former Wife and her husband paid for the Former Husband's bereavement dinner, funeral and cremation.

5.     Pursuant to Indiana Code § 31-16-6-7 (copy attached at Tab "3"), the Former Husband's obligation to pay child support was not terminated by his death.  For this reason, although Former Wife is a resident of Posey County, she filed this Complaint in the Gibson Circuit Court which appears to have continuing or concurrent jurisdiction arising from this Statute.

6.     TIAA-CREF is the Plan Administrator for Former Husband's retirement accounts and is made a party hereto in that capacity so the Former Husband's retirement accounts can be distributed pursuant to Order of the Gibson Circuit Court.

7.     This Court has jurisdiction over TIAA-CREF pursuant to Indiana Trial Rule 4.4(A)(1) because it is licensed to do business in Indiana and/or is conducting business in Indiana on a regular basis.

8.     Former Husband's retirement accounts are believed to be subject to the Employee Retirement Income Security Act of 1974 ("ERISA").  ERISA requires that the Plan Administrator pay the death benefit to the beneficiary named in the plan if the plan participant dies before retirement.  Rishel v. Estate of Rishel, 781 N.E.2d 735 (Ind. Ct. App. 2003)(copy attached at Tab "4");  Estate of MacAnally, 20 P.3d 1197 (Colo. Ct. App. 2000) reh'g. denied (2001)(copy attached at Tab "5").

9.    Former Wife petitions this Court for a Declaratory Judgment Order that Former Wife shall be the sole owner of all the Former Husband's retirement accounts upon which she is named beneficiary, free and clear from any claim by the contingent beneficiaries,   Vivian  Partridge and Loren D. Partridge.

10.    Former Husband's parents,    Vivian  Partridge and Loren D. Partridge, are made parties hereto to assert any claim or interest they may have in Former Husband's TIAA-CREF retirement accounts that they may have as contingent beneficiaries.

WHEREFORE, the Former Wife, with counsel, Thomas A. Massey, prays for the relief as requested and for all other relief just and proper in the premises.

_____
Plaintiff/Former Wife

I AFFIRM, under the penalties of perjury, that the foregoing representations are true to the best of my knowledge, information and belief.

_____
Plaintiff/Former Wife

**26D01-1712-PL-001894**

Gibson Superior Court

Filed: 12/14/2017 1:53 PM
Clerk
Gibson County, Indiana

# TAB "1"

FILED

NOV 6 1 2011 IN THE GIBSON CIRCUIT COURT

STATE OF INDIANA

COUNTY OF GIBSON, SS:                                                    2011 TERM

*Bradly Woodworth*
Clerk Gibson Circuit Court

IN RE: THE MARRIAGE OF

SARAH SIMON-PARTRIDGE
         Petitioner Wife

         And                                        CAUSE NO. 26C01-1109-DR-166

DANE PARTRIDGE
         Respondent Husband

## FINAL ORDER FOR DISSOLUTION OF MARRIAGE

        Comes now the Petitioner\Wife herein, Sarah Simon-Partridge, in person and with
counsel, C. Dean Higginbotham, and comes also the Respondent\Husband, Dane
Partridge, in person but without counsel, and the matter now comes on for Final Order on
Wife's Petition for Dissolution, and the parties now submit their agreement to the court
for its approval, and the court now being duly and sufficiently advised now enters its
findings and Order accordingly:

        1.   The court has jurisdiction of the parties and of the subject matter herein.

        2.   That one child, namely; Daniel Henry Partridge, date of birth, February ■,
2007, was born of the fruits of this marriage. The Wife is not now pregnant.

        3.   That the Wife and the Husband shall have joint custody of their minor child.
The Mother shall be the primary residential custodian. The Mother shall have parenting
time Monday through Friday, on a weekly basis, and the Father shall have Friday night
through Sunday. The Mother shall have, on a regular basis, the third week-end of the
month as parenting time, and the Father shall have Wednesday evening around
dinnertime for his parenting time on the Wednesday preceding the third week-end of the
month.

        The Mother shall have priority for the following holidays: Halloween, Memorial
Day, Christmas Eve and Christmas Day. The Father shall have priority for:
Thanksgiving, Labor Day, and Columbus Day. The Father shall have his choice of Fall
Break or Spring Break. The Father may also choose to have Easter.

        The parties shall cooperate as reasonably as possible on visitation with their minor
child. In the event that there is a disagreement as to times, or arrangements, for parenting
time, the Indiana Supreme Court Parenting Time Guidelines shall be consulted and
applied.

4.   Neither party shall be required to pay child support at this time, as both parties are contributing approximately the same amount towards the support of their child. Also, the Father is paying substantial child support for two other children, and making the bulk of the current mortgage payment on the marital residence.

5.   The Father shall claim the parties' minor child for tax purposes for the 2011 reporting year. Thereafter, the Mother shall claim the parties' minor child as a dependent for tax purposes.

6.   The parties agree that the Mother may relocate due to employment. It is anticipated that such relocation will most probably occur within the Eastern United States; however, in any event, the parties agree that it will not be necessary to file a Notice of Relocation with the court, because the parties agree that notice will be given on any relocation, and arrangements made for parenting time for the Father. The parties acknowledge that such relocation will most likely occur within the States of Indiana, Illinois, and Kentucky, but also possible are the St. Louis Metropolitan area, the tri-state area of Virginia, Tennessee, and West Virginia; the Lexington, Kentucky area, the Pittsburgh, Pennsylvania tri-state area of Pennsylvania, Ohio, and West Virginia; Alabama in the Tuscaloosa\Birmingham area; the Denver, Colorado region; and Price, Utah region. An international move may also necessary and has already been discussed and deemed acceptable between both parties. In any case, arrangements will be made between the parties for the father's parenting time.

7.   The parties agree that in lieu of child support being paid by the Father, the Father shall pay the equivalent amount of child support, as determined by the Indiana Child Support Guidelines, into a "re-location account". This account will be a checking account and the Mother shall have access to the statements at least quarterly. The re-location account payment shall be payable upon the sale of the parties' residence at 801 Harmony Road, New Harmony, Indiana. This provision is made to account for the house payments until such time as the residence is sold. The money in the re-location account shall be used by the Father for travel in the event of an actual re-location, and could also be used for future child support as may be required by the circumstances of the Mother.

8.   The parties agree that the marital residence (801 Harmony Road, New Harmony, Indiana) shall be sold for an amount sufficient to pay the mortgage in full, any realtor commission, and reasonable cost of sale. Any surplus from the sale of the marital residence shall be divided equally between the parties. The parties agree to aggressively market the house. In the interim, the Husband shall have possession of the house and may use it as his residence. The parties agree to each pay half of any and due and payable ad valorem property taxes, reasonable insurance on the marital residence and any other reasonable and necessary maintenance expenses. The Wife agrees to pay for housekeeping services to keep the house presentable for prospective buyers or otherwise

to do the housekeeping herself. The Husband shall also assist in keeping the house presentable.

9. The parties have divided their personal property and each shall now be the owner of the personal property in their respective possessions. Specifically, the Wife shall have the ownership of the Toyota automobile and the Husband shall have the ownership of the Ford Explorer. The furniture of the parties' minor child, the swing set, and other agreed personal items will remain at the marital residence until such time that the residence is sold.

10. The parties have certain financial obligations which they have agreed to divide between themselves. The Wife shall pay the Visa card account, the Capital One card account, and the Best Buy account. The Wife shall hold the Husband harmless on these accounts. The Husband shall pay the balance on the Lowe's card account in the approximate sum of $2,500.00. The Husband shall pay $1,000.00 toward the 2010 tax liability, the Wife shall pay the remainder of the balance owing provided that it is not more than $800.00 and if it is, the Husband shall pay anything over that amount.

11. The Husband shall have access to the 2011 FSA for dependent care. The Husband is entitled to the full $416.00 per month reimbursement.

12. There has been an irretrievable breakdown of the marriage and the marriage of the parties should be dissolved.

13. The Wife is not requesting restoration of her maiden name.

14. The parties shall cooperate on the sale of the marital residence and execute any necessary documents to complete said sale.

15. The Husband and Wife hereby represent to each other that there has been a full disclosure of all significant assets and liabilities, that the assets and liabilities referred to in this Agreement represent all the property (real, personal or mixed) and all the liability of any significant sort whatsoever and where-so-ever located, which either of them have any right, title, interest, or obligation whether legal or equitable.

THE COURT, having made its findings of fact now determines that its finding shall be the order of the court without further enumeration and now orders that the marriage of the parties is hereby dissolved.

_____
Judge, Gibson Circuit Court

APPROVED:

_____
DANE PARTRIDGE, Husband

_____
SARAH SIMON-PARTRIDGE, Wife

_____
C. DEAN HIGGINBOTHAM
Attorney for Wife

STATE OF INDIANA

COUNTY OF GIBSON

IN THE GIBSON CIRCUIT COURT **FILED**

IN RE THE MARRIAGE OF SARAH
SIMON-PARTRIDGE, wife, and DANE
PARTRIDGE, husband.

CAUSE NO. 26C01-1109-DR-166

OCT 21 2016

*Jim Kennon*
Clerk Gibson Circuit Cou

### AGREED ORDER MODIFYING DISSOLUTION DECREE

COME NOW, the former spouses, Sarah Beth Meighen f/k/a Sarah Simon-Partridge
("Wife"), by counsel, and Dane Partridge ("Husband"), and jointly move this Court to
modify the existing decree of dissolution in the above-referenced cause.

THIS COURT having reviewed the Motion, and being duly advised in the premises,
NOW FINDS that the Motion should be GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the decree of
dissolution filed on November 1, 2011, shall be modified as follows:

With respect to Paragraph 7, amend and restate such paragraph to state as follows:
The parties agree that the Husband shall pay child support in the amount of
$1,100.00 per month, which amount shall be paid to the Gibson County Clerk's
Office or the Indiana State Centralized Collection Unit. (INSCCU). Child support
payments shall be immediately withheld from the Husband's income pursuant to IC
Chapter 31-15-15 et seq. The parties shall cooperate in the submission to this Court
an Income Withhold for Support Form and any other documentation required by the
Clerk of this Court or state or Federal law to effectuate the income withholding order.
The parties further acknowledge that notwithstanding the aforementioned Paragraph
7 of the Decree, the parties have previously mutually agreed to payment of
$1,000.00 per month by the Husband to the Wife as support; and that agreement for

the aforesaid payment is and would be binding in this Court as an enforceable debt

and priority claim in any insolvency proceeding.

IT IS FURTHER IT ORDERED, ADJUDGED, AND DECREED that this Agreed Order

shall be effective September 28, 2016.

SO ORDERED this _21_ day of _October_____, 2016.


_____
Jeffrey F. Meade, JUDGE
Gibson Circuit Court

As agreed to by:


_____        _____
Sarah Beth Meighen f/k/a Sarah Simon         Dane Partridge
Partridge

CC:  All parties/counsel of record

<u>**CERTIFICATE OF COMPLIANCE**</u>

    I hereby certify that the foregoing document complies with the requirements of
Indiana Trial Rule 5(G) with regard to information excluded from the public record under
Indiana Administrative Rule 9(G).


_____
Adam J. Farrar  IN # 24871-82
VAN HAAFTEN & FARRAR, ATTORNEYS AT LAW LLC
Attorneys at Law
204 Main St.
Mt. Vernon, IN  47620
adam@vhflawyers.com
Phone:  (812) 838-1400
Fax:  (812) 838-1401
Attorneys for Wife



www.doxpop.com
(866) 369-7671

## Gibson County Circuit Court
Information current as of 12/6/17, 10:04 AM CST

## 26C01-1109-DR-000166
Sarah Simon Partridge V Dane Partridge
File date: 09/01/2011   Disposition Date: 11/01/2011

## Parties Involved

| Attorneys: | Parties: |
|---|---|
| Farrar, Adam Joseph [Attorney]<br>Address:<br>Van Haaften & Farrar<br>204 Main Street<br>PO Box 1026<br>Mount Vernon , IN 47620<br><br>Phones:<br>Fax: 812-838-1401<br>Work (Phone): 812-838-1400<br><br>State Bar ID: 2487182<br><br>Higginbotham, Collin Dean [Attorney]<br>Address:<br>208 East State Street<br>Princeton , IN 47670<br><br>State Bar ID: 827826 | Partridge, Sarah [Petitioner] |
|  | Partridge, Dane [Respondent] |
|  | Minor Children - Yes [Minor]<br>Address:<br>Mother Attended -Dec 10, 2011<br>Father Attended -Dec 10, 2011 |

## Hardcopy References

| Order Approving: | Book RJO; | 10/21/2016 Minute Entry:<br>10/21/2016 |
|---|---|---|

## Calendar Entries

No calendar entries exist for this case

## Minute Entries

*(Most recent at top)*

Minute Date: *10/21/2016*
Input Date: *Unavailable*
Type: **Order Approving**

Agreed Order Modifying Dissolution Decree
Order Signed: 10/21/2016
vol./Book RJO
  Reference: 10/21/2016 Order Approving ; Book RJO.

Minute Date: *9/21/2016*
Input Date: *Unavailable*
Type: **Appearance Filed**

For Party: Partridge, Sarah
Attorney: Farrar, Adam Joseph
File Stamp: 09/21/2016

Minute Date: *9/21/2016*
Input Date: *Unavailable*
Type: **Motion Filed**

Joint Motion To Modify Dissolution Decree And Income Withholding Order
Filed By: Partridge, Dane
Filed By: Partridge, Sarah
File Stamp: 09/21/2016

Minute Date: *12/12/2011*
Input Date: *Unavailable*
Type: **Converted Event**

Court receives notification that the Dane Partridge and Sarah Partridge
attended the Transparenting Seminar on December 10, 2011.  sb  (RJO? N) | JTS
Minute Entry Date: 12/12/2011

Minute Date: *11/1/2011*
Input Date: *Unavailable*
Type: **Converted Event**

Come now the parties by counsel, C. Dean Higginbotham, and file Waiver Of
Final Hearing. The Court, having been duly advised, now approves Final Order
For Dissolution Of Marriage.  sb  (EF)   IMAGE  (DISPOSED: BD   ) (RJO? Y) |
JTS Minute Entry Date: 11/01/2011

Minute Date: *9/7/2011*
Input Date: *Unavailable*
Type: **Converted Event**

Certified mail served Mr. Dane Partridge on 9-20-2011 signed (sp?). jm  (RJO?
N) | JTS Minute Entry Date: 09/07/2011

Minute Date: *9/1/2011*
Input Date: *Unavailable*
Type: **Converted Event**

Comes now C. Dean Higginbotham and files an Appearance Form on behalf of Sarah
Simon-Partridge and Petition For Dissolution of Marriage. cs  (RJO? N) | JTS
Minute Entry Date: 09/01/2011

## Financial Information

No financial information available for this case

**26D01-1712-PL-001894**

Gibson Superior Court

Filed: 12/14/2017 1:53 PM
Clerk
Gibson County, Indiana

# TAB "2"

# INDIANA STATE DEPARTMENT OF HEALTH
## CERTIFICATE OF DEATH

Local No. 002182          EDR No. 000000606547          State No. 053245

| 1. Decedent's Legal Name (First, Middle, Last) | 1a. Maiden Name (If female) | 2. Sex | 3. Time Of Death | 4. Date Of Death (Month/Day/Year) |
|---|---|---|---|---|
| DANE MICHAEL PARTRIDGE | | MALE | 12:56 PM | 10/28/2017 |

| 5. Social Security Number | 5a. Age - Yrs | 6b. Under 1 Year | 6c. Under 1 Month | 6d. Under 1 Day | 6e. Under 1 Hour | 7. Date Of Birth (Month/Day/Year) | 8. Birthplace (City and State or Foreign Country) |
|---|---|---|---|---|---|---|---|
| ___-__-9875 | 60 | Months | Days | Hours | Minutes | 07/__/1957 | FLINT, MI |

9. Ever In U.S. Armed Forces?  ☐ Yes  ☒ No  ☐ Unknown

10. If Death Occurred In A Hospital:  ☐ Inpatient  ☒ Emergency Department Outpatient  ☐ Dead on Arrival

10. If Death Occurred Somewhere Other Than A Hospital:  ☐ Hospice Facility  ☐ Decedent's Home  ☐ Nursing Home/Long-term Care Facility  ☐ Other (Specify)

| 11. Facility Name (If Not Institution, Give Street and Number) |
|---|
| DEACONESS HOSPITAL INC |

| 12. City Or Town, State, And Zip Code | 13. County Of Death | 14. Marital Status At Time Of Death |
|---|---|---|
| EVANSVILLE, IN, 47747 | VANDERBURGH | ☐ Married  ☐ Married, But Separated  ☐ Widowed  ☐ Never Married  ☒ Divorced |

| 15. Surviving Spouse's Name | 15a. Last Name Before First Marriage | 16. Decedent's Usual Occupation | 17. Kind Of Business/Industry |
|---|---|---|---|
| | | PROFESSOR | UNIVERSITY |

| 18. Residence - State | 18a. County | 18b. City Or Town |
|---|---|---|
| INDIANA | VANDERBURGH | EVANSVILLE |

| 18c. Street And Number | 18d. Apt. No. | 18e. Zip Code | 18f. Inside City Limits? |
|---|---|---|---|
| 605 SLEEPY FALLS | | 47712 | ☒ Yes  ☐ No |

| 19. Decedent's Education | 20. Decedent Of Hispanic Origin | 21. Decedent's Race |
|---|---|---|
| DOCTORATE(PHD,EDD) PROFESSIONAL(MD,DDS,DVM,LLB,JD) | NOT HISPANIC | White |

| 22. Parents Name (First, Middle, Last) | 23. Parents Name (First, Middle, Last) | 23a. Parent's Last Name Before First Marriage |
|---|---|---|
| LOREN DUANE PARTRIDGE | VIVIAN PARTRIDGE | WALKER |

| 24. Informant's Name | 24a. Relationship To Decedent | 24b. Mailing Address (Street and Number, City, State, Zip Code) |
|---|---|---|
| SARAH BETH MEIGHEN | FORMER SPOUSE | 21 LAKEVIEW DRIVE, MT VERNON, IN 47620 |

| 25. Place Of Disposition |
|---|

25a. Method Of Disposition:  ☐ Burial  ☒ Cremation  ☐ Donation  ☐ Entombment  ☐ Removal From State  ☐ Other (Specify)

| 25b. Place Of Disposition (Name Of Cemetery, Crematory, Other Place) | 25c. Location - City, Town, And State |
|---|---|
| EVANSVILLE CREMATORY | EVANSVILLE, IN |

26. Was Coroner Contacted?  ☒ Yes  ☐ No

| 27. Name And Complete Address Of Funeral Facility | 27a. Funeral Home License Number |
|---|---|
| SCHNEIDER FUNERAL HOME NORVELL CHAPEL, P.O. BOX 785, 512 MAIN ST., MOUNT VERNON, IN 47620 | FH10100021 |

| 27b. Signature of Indiana Funeral Service Licensee | 27c. License Number (Of Licensee) |
|---|---|
| THOMAS R. SCHNEIDER BY ELECTRONIC SIGNATURE | FD29500057 |

| 28. Enter The Chain Of Events - Diseases, Injuries, Or Complications - That Directly Caused The Death. Do Not Enter Terminal Events Such As Cardiac Arrest, Respiratory Arrest, Or Ventricular Fibrillation Without Showing The Etiology. Do Not Abbreviate. Enter Only One Cause On A Line. Add Additional Lines If Necessary. | | Approximate Interval: Onset To Death |
|---|---|---|
| Immediate Cause (Final Disease Or Condition Resulting In Death)  A. ACUTE ANTEROLATERAL MYOCARDIAL INFARCTION | | MINUTES |
| Due To (Or As A Consequence Of) | | |
| Sequentially List Conditions, If Any, Leading To The Cause Listed On Line A. Enter The Underlying Cause(Disease Or Injury That Initiated The Events Resulting In Death Last)  B. ATHEROSCLEROTIC HEART DISEASE | | |
| Due To (Or As A Consequence Of) | | |
| C. | | |
| Due To (Or As A Consequence Of) | | |
| D. | | |

29. Part II. Enter Other Significant Conditions Contributing To Death But Not Resulting In The Underlying Cause Given In Part I.

30. Was An Autopsy Performed?  ☐ Yes  ☒ No

30. Were Autopsy Findings Available To Complete The Cause Of Death?  ☐ Yes  ☐ No

| 31. Did Tobacco Use Contribute To Death?  ☐ Yes  ☒ Probably No  ☐ Unknown | 32. If Female:  ☐ Not Pregnant Within Past Year  ☐ Pregnant At Time Of Death  ☐ Not Pregnant, But Pregnant Within 42 Days Of Death  ☐ Not Pregnant, But Pregnant 43 Days To 1 year Before Death  ☐ Unknown If Pregnant Within The Past Year | 33. Manner Of Death:  ☒ Natural  ☐ Homicide  ☐ Accident  ☐ Pending Investigation  ☐ Suicide  ☐ Could Not Be Determined |
|---|---|---|

| 34. Date Of Injury (Month/Day/Year) | 35. Time Of Injury | 36. Place Of Injury (i.e. Decedent's Home, Construction Site, Restaurant, Wooded Area) | 37. Injury At Work?  ☐ Yes  ☐ No |
|---|---|---|---|

| 38. Location Of Injury - State | 38a. City Or Town | 38b. Street & Number | 38c. Apt. No. | 38d. Zip Code |
|---|---|---|---|---|

39. Describe How Injury Occurred

40. If Transportation Injury, Specify:  ☐ Driver/Operator  ☐ Passenger  ☐ Pedestrian  ☐ Other (Specify)

| 41. Signature, Of Person Certifying Cause Of Death | 42. Certifier (Check Only One)  ☐ Certifying Physician  ☒ Coroner  ☐ Health Officer |
|---|---|
| STEVEN WYNN LOCKYEAR BY ELECTRONIC SIGNATURE | |

| 43. Name, Address And Zip Code Of Person Certifying Cause Of Death | 44. License Number | 45. Date Certified |
|---|---|---|
| STEVEN WYNN LOCKYEAR, 201 S. MORTON AVENUE, EVANSVILLE, IN 47713 | | 11/01/2017 |

| 46. Approved Funeral Service Provider |
|---|
| EVANSVILLE CREMATORY |

| 47. Signature Of Local Health Officer | 48. For Registrar Only - Date Filed (Month/Day/Year) |
|---|---|
| ROBERT KENNETH SPEAR VIA ELECTRONIC SIGNATURE | NOV 01 2017 |

AMENDMENT TO CERTIFICATE OF DEATH (ENTRY OR ORIGINAL)

State Form 53395   ATTENTION ESTATE: The Social Security # is being requested by this state agency in order to pursue its responsibility. Disclosure is voluntary and there will be no penalty for refusal.

ORIGINAL DOCUMENT HAS A MULTICOLORED BACKGROUND ON SPECIAL WHITE SECURITY PAPER WITH THE GREAT SEAL OF THE STATE OF INDIANA ON BACK THAT TURNS FROM ORANGE TO YELLOW WHEN RUBBED. ORIGINAL DOCUMENT HAS A HIDDEN VOID ON FRONT THAT APPEARS WHEN PHOTOCOPIED.

WARNING:

STATE OF INDIANA

26D01-1712-PL-001894

Gibson Superior Court

Filed: 12/14/2017 1:53 PM
Clerk
Gibson County, Indiana

# TAB "3"

than twenty-one (21) years of age at the time the petition for educational needs was filed; and

(2) support for educational needs was denied based on the fact that the child was older than eighteen (18) years of age;

notwithstanding any other law, a parent or guardian of the child or the child may file with the court a subsequent petition for educational needs. The court shall consider the petition on the merits in accordance with this section and may not consider the absence of subsection (c) from law at the time of the initial filing.

*As added by P.L.1–1997, SEC.8. Amended by P.L.2–2007, SEC.363; P.L.80–2010, SEC.30; P.L.111–2012, SEC.2; P.L.207–2013, SEC.45, eff. July 1, 2012.*

### 31–16–6–7 Effect of child's emancipation or death of parent obligated to pay support

Sec. 7. (a) Unless otherwise agreed in writing or expressly provided in the order, provisions for child support are terminated:

(1) by the emancipation of the child; but

(2) not by the death of the parent obligated to pay the child support.

(b) If the parent obligated to pay support dies, the amount of support may be modified or revoked to the extent just and appropriate under the circumstances on petition of representatives of the parent's estate.

*As added by P.L.1–1997, SEC.8.*

### 31–16–6–7.5 Payment of reasonable funeral expenses; death of child while order is in effect

Sec. 7.5. If the child dies while a support order is in effect, the court may order either or both parents to pay reasonable funeral expenses.

*As added by P.L.207–2013, SEC.46, eff. May 9, 2013.*

### 31–16–6–7.8 Claims against estate; support not paid at time of death

Sec. 7.8. Child support that:

(1) the parent was obligated to pay; and

(2) has not been paid at the time of the parent's death;

constitutes a priority claim against the estate.

*As added by P.L.207–2013, SEC.47, eff. May 9, 2013.*

### 31–16–6–8 Repealed

*(Repealed by P.L.197–1997, SEC.29.)*

### 31–16–6–9 Information to be provided to court by parents

Sec. 9. (a) The custodial parent and noncustodial parent shall furnish the following information to the clerk of the court for entry into the Indiana support enforcement tracking system (ISETS) or its successor statewide automated support enforcement system at the time of the issuance or modification of a child support order:

(1) Except as provided in subsection (b), the parent's:

(A) Social Security number;

(B) current residence and mailing address;

(C) telephone numbers;

(D) date of birth; and

(E) driver's license number.

(2) The name, telephone number, and address of the parent's employer.

(b) An individual certified as a program participant in the address confidentiality program under IC 5–26.5 is not required to provide the individual's current residence and mailing address if the individual provides an address designated by the office of the attorney general under IC 5–26.5 as the individual's current residence and mailing address.

*As added by P.L.80–2010, SEC.31. Amended by P.L.128–2012, SEC.35.*

### 31–16–6–10 Modification of order; disclosure of assistance

Sec. 10. (a) Except as provided in subsection (c), a party affected by a support order shall inform the clerk of the court and the state central collection unit established within the child support bureau by IC 31–25–3–1 of any change of address not more than fifteen (15) days after the party's address is changed.

(b) At the time of the issuance or modification of a support order, the parties affected by the order shall inform the clerk of the court and the state central collection unit established within the child support bureau by IC 31–25–3–1 of:

(1) whether any of the parties is receiving or has received assistance under the:

(A) federal Aid to Families with Dependent Children program (42 U.S.C. 601 et seq.); or

(B) federal Temporary Assistance for Needy Families (TANF) program (45 CFR 260 et seq.); and

(2) the Social Security number of any child affected by the order.

The Social Security number required under subdivision (2) shall be maintained in the Indiana support enforcement tracking system (ISETS) or its successor statewide automated support enforcement system and shall be kept confidential and may be used only to carry out the purposes of the Title IV–D program.

(c) A party who is an individual certified as a program participant in the address confidentiality program under IC 5–26.5 is not required to provide the individual's current residence and mailing address if the individual provides an address designated by the office of the attorney general under IC 5–26.5 as the individual's principal residence and mailing address.

*As added by P.L.80–2010, SEC.32. Amended by P.L.128–2012, SEC.36.*

## Chapter 6.4
## Mediation

Section
31–16–6.4–1. Factors in determination
31–16–6.4–2. Docketing; extension; report

### 31–16–6.4–1 Factors in determination

Sec. 1. Whenever the court issues an order under this article, other than an ex parte order, the court shall determine whether the proceeding should be referred to

26D01-1712-PL-001894

Gibson Superior Court

Filed: 12/14/2017 1:53 PM
Clerk
Gibson County, Indiana

# TAB "4"

Rishel v. Estate of Rishel ex rel. Gilbert, 781 N.E.2d 735 (2003)

781 N.E.2d 735
Court of Appeals of Indiana.

Teresa J. RISHEL, Fortis Financial Group, Indiana
State Teachers' Retirement Fund, and American
United Life Insurance Co., Appellants–Defendants,

v.

ESTATE OF Michael R. RISHEL,
by its Administrator, Alan G.
GILBERT, Appellee–Plaintiff.

No. 37A04–0202–CV–79.
|
Jan. 16, 2003.

After widow filed claims against deceased husband's estate
for proceeds of retirement account and annuity, the
estate brought action against her for breach of contract,
specific performance, and declaratory judgment, alleging
that widow had violated the terms of property settlement
agreement. The Superior Court, Jasper County, Robert
W. Thacker, Special Judge, entered summary judgment
for estate, and widow appealed. The Court of Appeals,
Sharpnack, J., held that: (1) widow could assert claims as
beneficiary, and (2) estate was not entitled to attorney fees.

Affirmed in part, reversed in part, and remanded.

Friedlander, J., concurred and filed opinion.

**Attorneys and Law Firms**

*736 John T. Casey, Blaney, Casey & Walton,
Rensselaer, IN, Attorney for Appellant.

Michael Riley, Rensselaer, IN, Attorney for Appellee.

**OPINION**

SHARPNACK, Judge.

Teresa J. Rishel ("Teresa") appeals the trial court's grant
of summary judgment to the Estate of Michael R. Rishel,
by its administrator, Alan G. Gilbert, ("Estate") and the
trial court's denial of Teresa's motion to correct error.
Teresa raises two issues, which we consolidate and restate
as whether the trial court erred by determining that she

waived her right, as her former husband's designated
beneficiary, to the proceeds of his Indiana State Teachers'
Retirement Fund account and Fortis Financial Group
annuities by having *737 agreed to a property settlement
agreement that was made a part of a decree of dissolution.
The Estate raises one issue on cross appeal, which we
restate as whether the trial court erred by denying its
request for attorney fees. We affirm in part, reverse in part,
and remand.

The facts most favorable to Teresa, the nonmoving
party, follow. Michael R. Rishel ("Michael") and Teresa
were married on June 10, 1988. Michael designated
Teresa as the beneficiary of his Indiana State Teachers'
Retirement Fund account ("retirement account")[1] and
his Fortis Financial Group annuities ("Fortis annuities").
The marriage was dissolved on November 23, 1999.
The dissolution decree included a property settlement
agreement which provided, in pertinent part, that:

6. **RETIREMENT PLANS.** The retirement plans in
which [Michael] is a participant shall be set off to him
as his sole and separate property, free of any claim
of [Teresa]. The retirement plans in which [Teresa] is
a participant shall be set off to her as her sole and
separate property, free of any claim of [Michael].

* * * * *

9. **HUSBAND'S ASSETS.** [Michael] is the owner of
assets which are titled in his name alone, as shown
by the financial statement attached hereto as Exhibit
A. These include bank deposits at Lafayette Bank &
Trust Co., an ISTA retirement fund of $71,055.45,
Fortis Annuities, and an AUL Group annuity. These
assets have a value of approximately $90,000. All
assets identified on Exhibit A hereto which are
titled in Husband's name alone are hereby set off to
Husband as his sole and separate property, free of any
claim of [Teresa].

* * * * *

16. **INDEMNIFICATION.** Each party does hereby
indemnify, save, and hold the other harmless for all
damage, losses, expenses, fees (including reasonable
attorney's fees), and other costs and expenses

Rishel v. Estate of Rishel ex rel. Gilbert, 781 N.E.2d 735 (2003)

incurred by reason of said party's violation or breach of any of the terms and conditions thereof.

Appellant's Appendix at 23–25 (emphasis in original). Michael died on January 11, 2000, less than two months after the dissolution decree was entered, without changing his beneficiary designations on either the retirement account or the Fortis annuities. As the designated beneficiary, Teresa claimed the proceeds of the retirement account and Fortis annuities. However, the Estate filed a complaint for breach of contract, specific performance, and declaratory judgment alleging that Teresa had violated the terms of the property settlement agreement by claiming the proceeds of the retirement account and Fortis annuities.[2] Both Teresa and the Estate filed motions for summary judgment. The trial court granted the Estate's motion for summary judgment and ordered that the retirement *738 account and the Fortis annuities be distributed to and owned by the Estate.[3] Specifically, the trial court found that "[p]ursuant to the specific terms of the Rishel Decree of Dissolution and Property Settlement Agreement, [Teresa] gave up her right to any claim" to the retirement account and Fortis annuities. Id. at 16–17. The trial court also found that "[b]ased upon the designated evidence, and after considering the contentions, arguments, and authority of the respective parties, the [trial court] FINDS and ORDERS that the [Estate's] claim for attorney fees and expenses should and shall be denied." Id. at 18. Teresa then filed a motion to correct error, which the trial court denied.

I.

[1]  We first address the issue raised by Teresa. Where a motion to correct error is grounded upon a claim that the trial court erred by granting summary judgment, we review on appeal the grant of summary judgment. Here, we review whether the trial court erred in granting summary judgment by determining that Teresa waived her right, as Michael's designated beneficiary, to the proceeds of his retirement account and Fortis annuities by having agreed to a property settlement agreement that was made a part of their decree of dissolution.

[2]  On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party

is entitled to a judgment as a matter of law. Corr v. Am. Family Ins., 767 N.E.2d 535, 537–538 (Ind.2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. Shambaugh & Son, Inc. v. Carlisle, 763 N.E.2d 459, 460–461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. Id. The fact that the parties made cross-motions for summary judgment does not alter our standard of review. Hartford Acc. & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 291 (Ind.Ct.App.1997), trans. denied. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Id.

[3]  [4]  Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

Teresa argues that, as Michael's designated beneficiary, she is entitled to receive the proceeds from the retirement account and the Fortis annuities. The Estate counters that Teresa waived any claim to the retirement account and the Fortis annuities by entering into the property settlement agreement which was made part *739 of the dissolution decree. The parties agree that in a dissolution proceeding, the trial court "may only divide property with a vested interest at the time of dissolution." Bertholet v. Bertholet, 725 N.E.2d 487, 500 (Ind.Ct.App.2000).[4] Teresa argues that her status as beneficiary was not a vested interest, and, thus, was not waived by the property settlement agreement. Rather, according to Teresa, the property settlement agreement gave ownership of the retirement account and the Fortis annuities to Michael, but did not affect her right to receive the proceeds as a beneficiary named by Michael. The Estate counters that, by executing the property settlement agreement, Teresa waived her right to receive the proceeds even as a beneficiary.

Teresa relies, in part, upon our opinion in *Wolf v. Wolf*, 147 Ind.App. 246, 259 N.E.2d 96 (1970). In *Wolf*, this court considered whether, because of a settlement agreement incorporated into the divorce decree, a former wife was prohibited from taking the proceeds of a life insurance policy. *Id.* at 247–248, 259 N.E.2d at 97. There, the property settlement agreement provided, in part, that the wife "release[d] any and all rights, interest and title in any of the residue and remainder of the household furniture and personal property in which she [had] any claim, interest or title." *Id.* at 248, 259 N.E.2d at 97. The husband obtained ownership of the life insurance policy, but failed to remove his former wife as beneficiary. *Id.* at 247–248, 259 N.E.2d at 97. Upon his death, the former wife claimed the proceeds of the life insurance policy.

We held that the former wife did not release her claim as beneficiary of the policy by executing the property settlement agreement because:

> under the law of Indiana, the beneficiary-appellee had a mere expectancy or possibility. It was not until her former husband died, without changing the beneficiary, that her interest in, or right to, the proceeds of the policy became vested. Up until the time of his death the deceased, under the terms of the policy, could have terminated the mere expectancy of appellee.

*Id.* at 249, 259 N.E.2d at 98. Thus, "the policy was the sole property of the deceased and during his lifetime he could name as beneficiary anyone he wished. The mere expectancy that arose because [the former wife] was named as beneficiary was not a property right prior to the demise of the named insured." *Id.* at 250, 259 N.E.2d at 98. We concluded that the former wife "had a mere expectancy and not a property right, interest, or title capable of being construed within the term 'personal property' as used in the settlement agreement." *Id.* at 251, 259 N.E.2d at 99. Thus, the former wife was entitled to the proceeds of the life insurance policy as the beneficiary. *Id.*; *see also Metropolitan Life Ins. Co. v. Tallent*, 445 N.E.2d 990, 992 (Ind.1983) (holding that "[w]here by the terms of the policy the right is *740 reserved by the insured to change the beneficiary at will, then the original beneficiary acquires only a defeasible vested interest in the policy, a mere expectancy, until after the death of the insured").

Teresa also relies upon our holding in *Graves v. Summit Bank*, 541 N.E.2d 974 (Ind.Ct.App.1989), *trans. denied.* In *Graves*, the husband opened an Individual Retirement Account ("IRA") and named his wife as the beneficiary in the event of his death. *Id.* at 975. The parties divorced, and the husband failed to change the beneficiary designation for the IRA. *Id.* Several years later, the husband died and the former wife claimed the proceeds of the IRA. *Id.* The trial court granted summary judgment to the estate. *Id.*

We reversed, noting that, "in the context of life insurance contracts, ... a divorce decree alone does not result in a change of the beneficiary named in the insurance policy." *Id.* at 977. The estate argued that this rule applied only to term insurance and not to policies which have a cash value. *Id.* Thus, the estate contended that "a different rule should apply to life insurance policies that have 'cash value,' pensions which vest and accounts such as the one here." *Id.* However, we disagreed with that argument and held:

> We do not see any reason to create a distinction in the rule. While "whole life," "universal life," etc., type life insurance policies are personal property which may be assigned, transferred or sold, so are term insurance policies. The fact that term insurance policies have no "cash value" which is payable from the insurer to the owner of the policy does not render such a policy non-property. Therefore, we apply the same rule to IRA's that is presently applied to term life insurance policies.

*Id.*

The estate in *Graves* also argued that the former wife agreed to "relinquish all claims to any property awarded" to the former husband in the parties' property settlement agreement. *Id.* at 978. In rejecting that argument, we relied upon *Wolf* and held that:

> Again, we see no reason why this rule should not be applied to an IRA, as it has been applied to life insurance policies. At the time of

the entry of the Property Settlement Agreement, [the wife] possessed no property right in the IRA. She merely had an expectancy. [The husband] was free to change the beneficiary at any time. He did not do so.

*Id.* at 979. Thus, we held that the former wife was entitled to the proceeds of the IRA, and the trial court erred as a matter of law by granting summary judgment to the estate. *Id.*

The Estate in this case encourages us to follow *Von Haden v. Supervised Estate of Von Haden*, 699 N.E.2d 301 (Ind.Ct.App.1998). In *Von Haden*, the husband had an employment-related savings plan account of which his wife was the designated beneficiary. *Id.* at 303. In their dissolution proceeding, the property settlement agreement distributed the savings plan account benefits, "providing that each party would receive as his or her sole and separate property one-half of the non-taxable amount and one-half of the remaining taxable amount, and that each party would be responsible for one-half of the tax liability." *Id.* However, the husband did not change his beneficiary designation, leaving the wife as the beneficiary of his portion of the savings plan account. *Id.* The husband died a few months after the dissolution decree was entered. *Id.* As beneficiary, the wife received the funds, and the husband's estate filed an action to recover them. *Id.* The trial court granted summary judgment to the estate. *Id.*

*\*741* Another panel of this court affirmed, holding that the trial court did not err by granting summary judgment to the estate. *Id.* at 306. Importantly, the panel noted that the plan was governed by ERISA[5] which supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Id.* at 303–304 (quoting 29 U.S.C. § 1144(a)). The provisions of ERISA did not preclude a designated beneficiary from waiving a right to the payment of benefits. *Id.* (citing *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 279 (7th Cir.1990), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990)). Thus, the panel looked to the parties' property settlement agreement, which provided in part:

In consideration of all of the promises contained in this agreement, Petitioner and Respondent hereby release

all claims and right which either ever had, now has, or might hereafter have, against the other by reason of their former relationship as husband and wife, or otherwise, excepting all of the claims and rights of each party created and outstanding against the other pursuant to the terms of this agreement. It is the intent hereof that each party accepts the provisions of this agreement in full release and settlement of any and all claims and rights against the other. It is the further agreement of the parties that the provisions of this agreement shall inure to the benefit of, and be binding upon, the heirs, executors, administrators, and personal representatives of the parties.

*Von Haden*, 699 N.E.2d at 304–305.

Although the wife in *Von Haden* relied upon our holding in *Graves*, the *Von Haden* panel distinguished *Graves* for three reasons. *Id.* at 305. First, the *Graves* decision did not consider the preemption of state law by ERISA. *Id.* Second, *Graves* did not involve a situation where a life insurance policy beneficiary has entered into a separate agreement to accept only part of the policy proceeds. *Id.* Third, the panel did not believe that *Graves* supported the wife's argument "that the divorce [decree] did not give her a property right in the IRA, only a revocable interest." *Id.* The panel held that the wife's "argument overlook[ed] the fact that when the marital pot was divided, the parties and the court considered the cash value of the IRA at the time of separation, not the value of a revocable expectancy." *Id.* Thus, the panel held that, in light of the language of the property settlement agreement, it could not "say the trial court erred as a matter of law when it found that such language was broad enough to encompass a waiver by [wife] of her right to [husband's] share of his pension." *Id.* Consequently, the panel held that the trial court did not err as a matter of law when it held that the wife had "waived any right she might have had to [the husband's] share of his pension benefit upon his death." *Id.*

[5]   Here, the parties' property settlement agreement awarded the retirement account and the Fortis annuities to Michael *\*742* "as his sole and separate property, free of any claim of [Teresa]." Appellant's Appendix at 23–24. Michael died shortly after the dissolution decree was entered without removing Teresa as the designated beneficiary for both the retirement account and the Fortis annuities.

We hold that this case is more analogous to *Graves* and *Wolf* than *Von Haden*. As in *Graves*, we see no reason

to create a distinction between life insurance and the retirement account and Fortis annuities at issue here. Thus, the parties' divorce decree alone does not result in a change of the beneficiary named in the retirement account or the Fortis annuities. Moreover, Teresa did not waive her right to be Michael's beneficiary by entering into the property settlement agreement which awarded ownership of the retirement account and Fortis annuities to Michael. Michael received the property "free of any claim" of Teresa. As beneficiary, Teresa did not have a property right to the funds. Rather, she had a "mere expectancy or possibility." *See Wolf,* 147 Ind.App. at 249, 259 N.E.2d at 98. Michael still had the right to change the beneficiary and did not do so.[6] As in *Graves,* we cannot say that the "free of any claim" language of the property settlement agreement was sufficient for Teresa to waive her right to the proceeds of the funds as Michael's designated beneficiary.

The three reasons that the *Von Haden* panel used to distinguish *Graves* do not apply here. The parties do not claim that the retirement account or the Fortis annuities are in any way governed by ERISA. Teresa did not enter into a specific agreement to accept only part of the proceeds of the retirement account or the Fortis annuities.[7] Moreover, as previously noted, we cannot say that the language of the property settlement agreement is broad enough to encompass a waiver of Teresa's expectancy interest. Thus, the Estate's reliance upon *Von Haden* is misplaced.

The Estate also relies upon, and trial court gave some weight to, a decision of the Utah Supreme Court, *Estate of Anello v. McQueen,* 953 P.2d 1143 (Utah 1998). There, the wife claimed the proceeds of her former husband's IRA as beneficiary, and the Estate argued that she had waived her right to the proceeds by entering into the parties' property settlement agreement. *Id.* at 1145. The Utah Supreme Court noted that:

> The general rule in Utah is that divorce alone does not terminate a former spouse's rights as a survivor beneficiary of an insurance policy, IRA, or retirement benefits, or as a devisee or legatee under a will.... Thus, one who has an expectancy interest in an asset owned by a former spouse retains that interest

unless a property settlement or divorce decree evidences a clear intent to deprive that person of the expectancy interest in addition to disposing of existing property rights. For a waiver or renunciation of an expectancy interest to be found, it is not enough that there be general language from which a renunciation or waiver might be adduced. It *\*743* must appear from the terms of the property settlement or divorce decree that (1) the document focuses on the survivorship interests or expectancies, and (2) the disclaimer of any future rights that might arise from such expectancies is clear.

> *Id.*

The Utah Supreme Court held that the wife had clearly waived any claim as beneficiary of the IRA. *Id.* at 1146. The decision was based upon the language in the property settlement agreement. *Id.* Although the husband had explicitly agreed to continue the wife as beneficiary to his civil service retirement and his Martin Marietta retirement, no such language was included in the property settlement agreement with respect to the IRA. *Id.* at 1144–1145. Rather, as the court noted:

> The property settlement agreement and the divorce decree do not explicitly state that [the wife] renounces or relinquishes rights as a survivor beneficiary of the IRA in so many words, but the divorce decree uses language of renunciation that is comprehensive and, in the context of the decree and agreement, clear:

>> Plaintiff and Defendant are awarded their own separate IRA, as their individual and separate property, free and clear of any claim or interest of the other party.

> That language clearly includes both existing property interests and future expectancies. Given the context of the documents and the specific focus of the parties on other expectancies arising from the assets with which they were dealing, we conclude that the parties used the terms "free and clear of any claim or interest of the other party" to mean all claims or interests including those interests they had just addressed in connection with

Case 1:18-cv-00168-JMS-MPB   Document 1-1   Filed 01/19/18   Page 27 of 36 PageID #: 34

Rishel v. Estate of Rishel ex rel. Gilbert, 781 N.E.2d 735 (2003)

their civil service retirement benefits and the Martin Marietta retirement and insurance benefits. Taking the documents as a whole and the language dealing with the IRAs in context, we see no room to doubt the parties' intent to accomplish a renunciation.

*Id.* at 1146. Thus, the provisions referred to by the Utah Supreme Court dealt in detail with the parties' present income rights and future beneficiary rights to various retirement plans. The Utah Supreme Court was construing the "free and clear of any claim or interest" language in conjunction with other provisions of the property settlement agreement not found in this case. Here, none of the other provisions of the property settlement agreement make it clear that Teresa and Michael were addressing a waiver of Teresa's future expectancy rights. Thus, *Anello* is distinguishable.

Because we hold that Teresa did not waive her right to the proceeds as a result of having agreed to the property settlement agreement which was made a part of the dissolution decree, Teresa, as designated beneficiary, is entitled to receive the proceeds according to the terms of the retirement account and the Fortis annuities. We hold that Teresa is entitled to summary judgment as a matter of law. The trial court erred by granting the Estate's motion for summary judgment on this issue. *See, e.g., Graves,* 541 N.E.2d at 979.

## II.

[6]   The Estate cross-appeals from the trial court's denial of its request for attorney fees. The Estate relies upon the property settlement agreement which provides, in pertinent part, that: "Each party does hereby indemnify, save, and hold the other harmless for all damage, losses, expenses, fees (including reasonable attorney's fees), and other costs and expenses **\*744** incurred by reason of said party's violation or breach of any of the terms and conditions thereof." Appellant's Appendix at 25. The Estate claims that Teresa violated the property settlement agreement by filing claims to the retirement fund and the Fortis annuities. Having held that Teresa did not waive her right to the proceeds of the retirement fund and the Fortis annuities by entering into the property settlement agreement, we hold that Teresa did not violate or breach the property settlement agreement by claiming the funds as designated beneficiary. Thus, the trial court did not err

by denying the Estate's request for attorney fees under the property settlement agreement. *See, e.g., Tipton County ex rel. Tipton County Council v. State ex rel. Nash,* 731 N.E.2d 12, 19 (Ind.Ct.App.2000) (holding that because plaintiff's underlying claim was without merit, his claims for liquidated damages and attorney fees must also fail), *trans. denied.*

For the foregoing reasons, we affirm the trial court's denial of the Estate's request for attorney fees. However, we reverse the trial court's grant of summary judgment to the Estate and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., concurs.

FRIEDLANDER, J., concurs with separate concurring opinion.

FRIEDLANDER, Judge, concurring.
I agree that Teresa Rishel should receive the disputed funds, but upon a different rationale than that articulated by the majority.

At first blush, I was troubled by the fact that an ex-spouse could file a claim for the proceeds of an investment account in which she voluntarily relinquished any interest as part of a negotiated dissolution settlement agreement. I would have serious misgivings awarding those proceeds to the ex-spouse if the gist of the facts was that the ex-spouse's interest arose by virtue of beneficiary status, and said status was the product of the deceased ex-spouse's perhaps excusable neglect in changing that designation. My review of the record reveals, however, that there is evidence that Michael Rishel's failure to remove Teresa Rishel as beneficiary was intentional, not inadvertent. For example, I note that Robert C. Kaye, claiming to be a friend of both of the Rishels, submitted an affidavit stating, "Mike specifically spoke about Teresa being the beneficiary for his retirement and commenting that he had not changed beneficiaries because he believed that he and Teresa would probably be back together." *Appendix to Appellant's Brief* at 39. Based in large part upon this and other evidence that, notwithstanding the contrary terms of the dissolution decree, Michael chose to leave Teresa as the beneficiary on his retirement and annuity accounts, I

Rishel v. Estate of Rishel ex rel. Gilbert, 781 N.E.2d 735 (2003)

agree that she should receive those funds as the designated beneficiary.

**All Citations**

781 N.E.2d 735

**Footnotes**

1    The Indiana State Teachers' Retirement Fund is governed by Ind.Code §§ 5–10.2–1–1 to –8–5 (1998 & 2001 Supp.).

2    The Estate also named Fortis Financial Group, the Indiana State Teachers' Retirement Fund, American United Life Insurance Company, and AIG Life Insurance Company as defendants. However, AIG Life Insurance Company was dismissed from the litigation, and Teresa "claims no interest in the American United Life Insurance Company policy." Appellant's Brief at 7. Fortis Financial Group and the Indiana State Teachers' Retirement Fund do not appeal the trial court's judgment.

3    The Estate also filed a motion to strike affidavits filed by Teresa and points out that "[n]owhere in any of the record has that Motion been ruled upon." Appellee's Brief at 3–4. However, the affidavits are irrelevant to our decision.

4    Ind.Code § 31–15–7–4 (1998) requires a trial court to "divide the property of the parties" in a dissolution proceeding. Ind.Code § 31–9–2–98 (1998) defines "property" as "all the assets of either party or both parties," including:
     (1) a present right to withdraw pension or retirement benefits;
     (2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage; and
     (3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

5    ERISA is the acronym for the Employee Retirement Income Security Act of 1974. *See* 29 U.S.C. § 1001 *et seq.* Our supreme court noted that the "stated purpose of ERISA is to 'protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to Federal courts.'" *Midwest Sec. Life Ins. Co. v. Stroup,* 730 N.E.2d 163, 166 (Ind.2000) (citing 29 U.S.C. § 1001(b)).

6    Although the parties have not provided us or the trial court with documentation regarding the terms of the retirement account or the Fortis annuities, neither party suggests that there was any limitation on Michael's ability to designate a beneficiary or that any term relating to that ability has any significance to the issues here. The terms under which a beneficiary is designated could, of course, have significant implications in these situations.

7    Moreover, even if Teresa had been awarded only a portion of the retirement account or Fortis annuities in the property settlement agreement, we would fail to see any distinction between this case and *Graves.*

---

**End of Document**                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.

26D01-1712-PL-001894

Gibson Superior Court

Filed: 12/14/2017 1:53 PM
Clerk
Gibson County, Indiana

# TAB "5"

20 P.3d 1197
Colorado Court of Appeals,
Div. V.

In the Matter of the ESTATE OF
Richard B. MacANALLY, Deceased.
The Estate of Richard B. MacAnally, Appellant,
v.
Imogene V. Levin, Objector–Appellee.

No. 99CA0120.
|
March 30, 2000.
|
Rehearing Denied June 1, 2001.
|
Certiorari Denied April 16, 2001.

Benefits plan administrator filed a petition requesting that a deceased employee's annuity benefits be deposited into the registry of the court pending the court's determination of whether the funds would properly be distributed to the employee's estate or to his former wife. The District Court, Boulder County, Morris W. Sandstead, Jr., J., ordered that the proceeds were to be paid to the former wife, and the employee's estate appealed. The Appellate Court, Taubman, J., held that: (1) significant conduct giving rise to former wife's cause of action occurred after the effective date of the Employee Retirement Income Security Act of 1974 (ERISA), such that ERISA applied; (2) ERISA preempted application of the State divorce revocation statute based on principles of direct preemption; and (3) with regard to ERISA-governed plans, it is not appropriate to apply federal common law where state law conflicts with ERISA.

Affirmed.

## Attorneys and Law Firms

*1199 Hutchinson Black and Cook, L.L.C., James England, Rachel Maizes, Boulder, Colorado, for Appellant.

Holme Roberts & Owen, LLP, John R. Webb, Renee W. O'Rourke, Stephanie M. Tuthill, Denver, Colorado, for Objector–Appellee.

## Opinion

Opinion by Judge TAUBMAN.

In this action for payment of benefits pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq. (1994), appellant, the Estate of Richard B. MacAnally (Estate), appeals the trial court's award of benefits in favor of appellee, Imogene V. Levin. We affirm.

MacAnally and Levin were married in 1967. In 1972, MacAnally became a member of the faculty at the California Institute of Technology (Cal Tech). At that time, MacAnally executed two annuity contracts issued by Teacher's Insurance and Annuity Association and College Retirement Equities Fund (TIAA–CREF). MacAnally named Levin as beneficiary of those annuity contracts. Cal Tech made contributions to the annuity contracts until 1974 when MacAnally terminated his employment with Cal Tech. In 1974, Levin and MacAnally also divorced, and as part of the property settlement, MacAnally received the annuity contracts as his sole and separate property.

In 1987, MacAnally remarried. He died in July 1997, still married to his second wife. However, at the time of MacAnally's death, Levin remained as the beneficiary designated on MacAnally's TIAA–CREF annuity contracts.

After MacAnally's death, the TIAA–CREF administrator filed a petition requesting that MacAnally's TIAA–CREF annuity plan benefits be deposited into the registry of the district court pending the court's determination of the proper distribution of funds. Levin filed an objection, asserting that the annuity plan was subject to ERISA, and that as the named beneficiary she was entitled to death benefits pursuant to the plan provisions. The Estate sought plan benefits under § 15–11–804, C.R.S.1999, which by operation of law revokes any beneficiary designation of a spouse from whom a decedent was divorced at the time of death. Agreeing with Levin, the trial court ordered that the proceeds from MacAnally's TIAA–CREF annuity be paid to her as the sole designated beneficiary of the contracts. This appeal followed.

In re Estate of MacAnally, 20 P.3d 1197 (2000)

2000 CJ C.A.R. 1687

### I. ERISA Applicability

[1]   The Estate contends the trial court erred in determining that ERISA applies to MacAnally's annuity contracts. It argues that ERISA does not apply when the benefits at issue were entirely funded and the significant events affecting distribution decisions occurred before ERISA became effective in 1975. We are not persuaded.

[2]   The trial court's determination regarding ERISA applicability raises a question of law and is therefore subject to de novo review. *Lakeview Associates, Ltd. v. Maes*, 907 P.2d 580 (Colo.1995).

ERISA is a comprehensive statute regulating employee pension and welfare plans. "ERISA imposes participation, funding, and vesting requirements on pension plans and sets various uniform standards including rules concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans." *Celebrity Custom Builders v. Industrial Claim Appeals Office*, 916 P.2d 539, 542 (Colo.App.1995).

In 29 U.S.C. § 1144(b)(1)(1994), Congress expressly defined the plans to which ERISA applies. This section provides that "[ERISA] shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." This section is relevant to our analysis here because some of the acts or omissions relating to MacAnally's TIAA–CREF benefits occurred prior to January 1, 1975, while other acts giving rise to Levin's cause of action occurred after the effective date.

[3]   We are not aware of a Colorado case interpreting 29 U.S.C. § 1144(b)(1). However, courts of other jurisdictions have considered when substantial acts relating to benefits entitlement occurred—both before and after the ERISA effective date. These cases *1200 articulate a two-pronged test for determining whether ERISA applies. First, a court must look at when the cause of action accrued. Second, the court must determine when the conduct that formed the basis for the claim occurred. *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496 (9th Cir.1984). When the "substantial acts contributing to a cause of action occur after the [effective] date, ERISA is applicable to the cause of action." *Lafferty v. Solar Turbines International*, 666 F.2d 408, 410 (9th Cir.1982).

It is undisputed that the annuity contracts are "employee pension benefit plans," as defined by ERISA, and are subject to the provisions of ERISA, unless they are excluded pursuant to 29 U.S.C. § 1144 (1994). Although the trial court defined the contracts as "welfare benefit plans," the contracts were actually "pension benefit plans" because they were retirement annuity contracts. They were not established "for the purpose of providing for ... participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." 29 U.S.C. § 1002 (1994).

In support of its argument, the Estate relies on cases holding that, although a cause of action for determining a plan participant's benefits may have arisen after ERISA's effective date, ERISA will not apply when all the significant or substantial acts or omissions occurred before ERISA's effective date. *See Jameson v. Bethlehem Steel Corp. Pension Plan*, 765 F.2d 49 (3d Cir.1985) (ERISA does not apply where significant acts or omissions occurred prior to the effective date, despite the fact that the cause of action arose after the effective date); *Menhorn v. Firestone Tire & Rubber Co., supra* (denial of plan benefits after ERISA effective date was insufficient basis for ERISA application because determination of benefits entitlement was based on events which occurred before the effective date); *Martin v. Bankers Trust Co.*, 565 F.2d 1276 (4th Cir.1977) (ERISA inapplicable where employment relationship terminated and employee requested benefits prior to ERISA's effective date); *Grich v. Wood & Hyde Leather Co.*, 74 A.D.2d 183, 427 N.Y.S.2d 96 (1980) (ERISA inapplicable to claim for pension benefits where significant acts giving rise to claim occurred prior to ERISA effective date).

We conclude these cases are distinguishable because the relevant acts or omissions here consisted of the contributions to the annuity contracts, MacAnally's termination from employment at Cal Tech, and the divorce between MacAnally and Levin. It is undisputed that all these acts occurred before ERISA became effective January 1, 1975. We further conclude that the death of MacAnally was not a substantial "act or omission," but rather was the "conduct" that gave rise to Levin's cause of action. *See Menhorn v. Firestone Tire & Rubber, Co., supra; Lafferty v. Solar Turbines International, supra.*

In re Estate of MacAnally, 20 P.3d 1197 (2000)

2000 CJ C.A.R. 1687

Pursuant to the TIAA–CREF plan, Levin was entitled to a death benefit in the event MacAnally died before retirement without changing the beneficiary. The death benefit is distinguished from MacAnally's retirement benefits in that the death benefit was only payable if MacAnally died before he retired, whereas the retirement benefits were payable to MacAnally if he survived until his retirement. MacAnally could have changed the beneficiary of his TIAA–CREF benefits at any time between the 1974 divorce and his death in 1997, but chose not to do so during those 23 years. Therefore, if MacAnally had changed the beneficiary or survived until retirement, Levin would not have been entitled to the death benefits because MacAnally would have begun collecting the payments. Levin had a cause of action to collect the death benefits only if MacAnally died before retirement without changing the beneficiary.

Here, the trial court determined that the relevant "act or omission" was either the 1990 enactment of the divorce revocation statute, § 15–11–804(7)(c) C.R.S., 1999, or MacAnally's death in 1997. Based on this determination, the trial court held that the significant acts or omissions occurred after ERISA's effective date, and therefore, that ERISA applies.

However, we conclude that although the relevant acts or omissions occurred prior to January 1, 1975, these acts were not significant *1201 as contemplated in the cases discussed above. *See Lafferty v. Solar Turbines International, supra* (where substantial acts contributing to cause of action occur after ERISA effective date, ERISA applies, despite the fact that acts affecting a plan also occurred before ERISA effective date); *see also Grich v. Wood & Hyde Leather Co., supra* (recognizing that if acts prior to ERISA effective date were minor and other acts giving rise to cause of action occurred after ERISA effective date, ERISA could apply). Rather, MacAnally's death in 1997, his failure to change the beneficiary, and the enactment of the divorce revocation statute were acts which constituted significant conduct giving rise to Levin's cause of action.

Because MacAnally's death occurred well after the ERISA effective date, we conclude ERISA applies in determining the party entitled to payment of MacAnally's TIAA–CREF benefits – Levin or the Estate.

## II. ERISA Preemption

[4]   The Estate next contends the trial court erred in determining that ERISA preempted the application of the Colorado divorce revocation statute. We disagree.

[5]   The purpose of ERISA is "to protect the interests of employees and their beneficiaries in employee benefit plans and to ensure that plans and plan sponsors are subject to a uniform body of benefit law by minimizing the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Barrett v. Hay,* 893 P.2d 1372, 1380 (Colo.App.1995).

A beneficiary may bring a cause of action "to recover benefits due to him under the terms of [the] plan" pursuant to 29 U.S.C. § 1132 (1994). ERISA imposes a fiduciary duty upon a plan administrator to pay plan benefits to the entitled employee or designated beneficiary in accordance with the terms of the plan. 29 U.S.C. § 1104 (1994).

Since the enactment of ERISA, numerous courts have addressed the issue of ERISA preemption of state law, and at least 16 such cases have been decided by the United States Supreme Court. They have considered three distinct preemption principles—direct, statutory, and field preemption.

[6]   Under direct preemption, a federal law preempts a state law where the state law directly conflicts with the federal law. *See Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997).

[7]   Statutory preemption occurs when a statute expressly states that it preempts other law. In the ERISA context, ERISA preempts a state law pursuant to statutory preemption where a state law relates to any employee benefit plan covered by ERISA. 29 U.S.C. § 1144(a)(1994); *Barrett v. Hay, supra,* 893 P.2d at 1376 ("A law relates to an employee benefit plan ... if it has a connection with or reference to such plan.")

[8]   Field preemption occurs where a federal law "so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the states to supplement it." *Greenwood Trust Co. v. Conley,* 938 P.2d 1141, 1147 (Colo.1997).

Despite the many cases analyzing the preemptive effect of ERISA on state law, courts have not reached a definitive conclusion. *Compare California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (pursuant to ERISA statutory preemption and principles of field preemption, "California's prevailing wage law neither makes 'reference to' nor has 'connection with' ERISA plans and, thus, does not 'relate to' ERISA plans and is not preempted by ERISA"); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (based on statutory and field preemption, New York statute not preempted because it did not "relate to" employee benefit plans pursuant to ERISA), *with Boggs v. Boggs, supra* (Louisiana community property law preempted because it directly conflicts with express ERISA anti-alienation provisions); *Houdek v. Mobil Oil Corp.,* 879 P.2d 417, 420 (Colo.App.1994) ("state law tort claims which conflict directly with viable ERISA cause of action are preempted by ERISA").

**\*1202** The Estate correctly points out that in *Dillingham* and *Travelers* the Supreme Court cut back significantly on its prior expansive interpretation of statutory preemption under ERISA. However, those cases only addressed ERISA statutory and field preemption.

[9]   In a more recent case, *Boggs v. Boggs, supra,* the Supreme Court addressed direct preemption by ERISA. Relying on conventional conflict preemption principles, the *Boggs* Court held that: "[i]n the face of [a] direct clash between state law and the provisions and objectives of ERISA, the state law cannot stand." *Boggs v. Boggs, supra,* 520 U.S. at 844, 117 S.Ct. at 1762, 138 L.Ed.2d at 57. The Court further stated, "[c]onventional conflict preemption principles require preemption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Boggs v. Boggs, supra,* 520 U.S. at 844, 117 S.Ct. at 1762, 138 L.Ed.2d at 57. Therefore, as the *Boggs* Court held, if a direct conflict exists, a court need only address direct preemption and does not need to evaluate whether a state law is preempted based on statutory or field preemption.

The Estate further argues that, notwithstanding *Boggs,* two recent cases have applied the Supreme Court's ERISA statutory preemption cases in circumstances similar to those presented here and have held that state law is not preempted. *See Emard v. Hughes Aircraft Co.,* 153 F.3d 949 (9th Cir.1998) (based on ERISA statutory and field preemption, ERISA did not preempt California community property law because the law did not alter plan administration or affect relationships between ERISA entities); *In re Estate of Egelhoff,* 139 Wash.2d 557, 989 P.2d 80 (1999) (pursuant to statutory and field preemption, ERISA did not preempt Washington state law under which spouses named as beneficiaries of ERISA plans automatically lose such designation upon dissolution of marriage).

In our view, both cases are distinguishable. *Emard* did not address direct preemption, and we disagree with the *Egelhoff* court's analysis of the scope of direct conflict preemption as articulated in *Boggs v. Boggs, supra.*

[10]   In *Egelhoff,* the court defined direct preemption as applying where "[the state law] has a sufficient 'connection with' an ERISA plan to compel preemption." However, the *Egelhoff* court further stated, "[A direct preemption analysis is required when] a state law ... directly or indirectly invades the core functions of ERISA regulation...." *In re Estate of Egelhoff, supra,* 989 P.2d at 89. Thus, the *Egelhoff* court's definition of "*direct preemption* " combined the principles of direct and statutory preemption. In our view, however, the analysis of whether a state law has a "connection with" an ERISA plan arises when a court must evaluate whether a state law "relates to" an ERISA plan. *See* 29 U.S.C. § 1144(a) (1994). According to case law, a state law "relates to" an ERISA plan if it "refers to" or has a "connection with" such plan. *Barrett v. Hay, supra.* Therefore, we conclude that the "connection with" analysis only applies to statutory preemption.

According to *Boggs,* direct preemption occurs where "compliance with both federal and state regulations is a physical impossibility, ... or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Boggs v. Boggs, supra,* 520 U.S. at 844, 117 S.Ct. at 1762, 138 L.Ed.2d at 57.

In re Estate of MacAnally, 20 P.3d 1197 (2000)
2000 CJ C.A.R. 1687

Thus, while the *Egelhoff* court recognized the second part of the *Boggs* definition of direct conflict preemption, it combined that with a factor related to statutory preemption analysis which is contrary to our reading of *Boggs. Boggs* states that where "there is a conflict ... [courts] need not inquire whether the statutory phrase 'relate to' provides further and additional support for the preemption claim." *Boggs v. Boggs, supra,* 520 U.S. at 841, 117 S.Ct. at 1761, 138 L.Ed.2d at 55. In addition, the *Egelhoff* court confined the *Boggs* holding to cases involving conflicts with the ERISA anti-alienation provision. Here, however, we apply *Boggs* to 29 U.S.C. § 1104, which expressly directs plan administrators to pay plan benefits to designated plan beneficiaries.

*1203 For these reasons we do not adopt the reasoning of *Egelhoff,* but instead follow the Eighth Circuit which applied the direct preemption analysis articulated in *Boggs. See Painter v. Golden Rule Insurance Co.,* 121 F.3d 436, 439 (8th Cir.1997) ("If there is a conflict between ERISA and state law, state law is preempted, whether or not the statutory phrase 'relate to' of ERISA's express preemption provision offers further and additional support for preemption claim."). *Cf. Prudential Insurance Co. v. National Park Medical Center, Inc.,* 154 F.3d 812 (8th Cir.1998) (state law preempted based on statutory and field preemption; court did not consider direct preemption because the parties did not raise it).

In summary, we conclude that the Colorado divorce revocation statute, § 15–11–804(7)(c), directly conflicts with ERISA in the circumstances presented here. Pursuant to ERISA and MacAnally's TIAA–CREF contract, the plan administrator must pay a death benefit to the beneficiary named in the plan if the plan participant dies before retirement. *See* 29 U.S.C. § 1104 (1994). In direct contrast, the divorce revocation statute changes the beneficiary to whom benefits are paid from the beneficiary designated in the plan—Levin, to an unnamed beneficiary—the Estate. This constitutes a direct conflict,

and thus based on principles of direct preemption, ERISA preempts the divorce revocation statute.

### III. Federal Common Law

The Estate also asserts that even if ERISA preempts the Colorado divorce revocation statute, that statute should be applied as federal common law to dictate the distribution of MacAnally's TIAA–CREF benefits to the Estate. We are not persuaded.

[11]  [12]  When it enacted ERISA, Congress provided that the states should develop a "federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80, 92 (1989). The federal common law is created by reference to state law. However, with regard to ERISA-governed plans, it is not appropriate to apply federal common law where the state law conflicts with ERISA. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Mohamed v. Kerr,* 53 F.3d 911 (8th Cir.1995).

Because the Colorado statute directly conflicts with the express provisions of ERISA, we conclude this is not an appropriate circumstance for the application of federal common law.

Accordingly, we affirm the trial court's award of the TIAA–CREF benefits to Levin.

Judgment affirmed.

Judge ROTHENBERG and Judge CASEBOLT concur.

**All Citations**

20 P.3d 1197, 2000 CJ C.A.R. 1687

---

End of Document
© 2017 Thomson Reuters. No claim to original U.S. Government Works.

**26D01-1712-PL-001894**

Filed: 12/14/2017 1:53 PM
Clerk
Gibson County, Indiana

Gibson Superior Court

STATE OF INDIANA                                )
                                                ) SS:    SERVE VIA CERTIFIED MAIL
COUNTY OF GIBSON                                )

IN THE GIBSON CIRCUIT COURT

SARAH (SIMON-PARTRIDGE) MEIGHEN        )
            Plaintiff/Former Wife,         )
vs.                                        )
                                           )
TIAA-CREF                                  )
            Defendant/Retirement Plan      )    Cause No. 26C01-1712-PL-____
            Administrator,                 )
vs.                                        )
                                           )
VIVIAN PARTRIDGE AND                       )
LOREN D. PARTRIDGE                         )
            Defendants/Contingent          )
            Beneficiaries.                 )

**SUMMONS**

DEFENDANT:      TIAA-CREF
ADDRESS:        730 Third Ave.
                New York, NY 10017

TO ABOVE-NAMED DEFENDANT:

You have been sued by the person(s) named "Plaintiff", in the Court stated above. The nature of the suit against you is stated in the Complaint which is attached to this document. It also states the demand which the Plaintiff has made and wants from you. You must answer the Complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this Summons, or judgment may be entered against you for what the Plaintiff has demanded. If you have a claim for relief against the Plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

The following manner of service of Summons hereby designated:

**CERTIFIED MAIL**

If not so designated, the Clerk shall cause service to be made by mail.

Dated: __12/14/2017_____, 2017.

Thomas A. Massey                                    _Jim Morrow_
Massey Law Offices, LLC                             Jim Morrow, Clerk
Curtis Building - Suite 502
915 Main Street
P.O. Box 3526                                       By _____VP_____ Deputy
Evansville, Indiana: 47734-3526                              (SEAL)
(812) 491-9333 Telephone
(812) 491-9339 Facsimile
E-mail: TAM@masseylawoffices.com
Attorney for Plaintiff

**RETURN ON SERVE OF SUMMONS BY MAIL**

I hereby certify that service of summons with return receipt requested was mailed on the ___ day of _____, 2017, and that a copy of the return receipt was received on the, which copy is attached herewith.
Dated _____, 2017.   Jim Morrow, Clerk

By _____
        Deputy

**RETURN ON SERVICE OF SUMMONS BY SHERIFF**

I hereby certify that I have served the within summons:
    1.      By delivering personally on the ___ day of _____, 2017, a copy of the summons and a copy of the petition to the within-named Defendant.
    2.      By leaving on the ___ day of _____, 2017, for the within-named Defendant a copy of the summons and a copy of the petition at the respective dwelling place or usual place of abode with some person of suitable age and discretion whose duties or activities include prompt communication of such information to the person being served.
    3.      By leaving on the ___ day of _____, 2017, for the within-named Defendant a copy of the summons and a copy of the petition at the respective or usual place of business or employment with some person of suitable age and discretion whose usual duties or activities include prompt communication of such information to the person being served.
        Whenever service is made on part 2, or 3., there shall be added:
        That on the ___ day of _____, 2017, I sent by first-class mail a copy of the summons without the petition to the within-named Defendant.
Fees:   Summons _____
        Mileage _____            Sheriff of Gibson County, Indiana
        Total   _____            By _____
                                                Deputy

*SERVE VIA CERTIFIED MAIL*

TIAA-CREF
730 Third Ave.
New York, NY 10017



MASSEY LAW OFFICES, LLC
CURTIS BUILDING – SUITE 502
915 MAIN STREET
P.O. BOX 3526
EVANSVILLE, INDIANA 47734-3526

TO

TIAA-CREF
730 Third Ave.
New York, NY 10017

12/4
R220

7015 0920 0001 7358 8752



US
FIR
062S-1